UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMES RICHARD HENDRIX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12CV00017 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by

James Richard Hendrix, a person in federal custody.  On November 8, 2010, Hendrix plead

guilty before this Court to the offense of conspiracy to manufacture methamphetamine and, on

February 8, 2011, this Court sentenced Hendrix to the Bureau of Prisons for a term of 120

months, a sentence within the sentencing guideline range. Hendrix's § 2255 action, which is

based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for

disposition.

**I.     PROCEDURAL HISTORY**

On September 19, 2009, the SEMO DTF received information from a reliable

confidential source that had spoken to James "Turkey" Myers earlier that day. Plea Stip, p. 9.

Myers told the source that he and "Jimmy" were going to cook meth in Marble Hill. *Id.*  Officers

then established surveillance on Myers' vehicle which was located in Chaffee, Missouri.  Plea

Stip, p. 10. While not reflected in the plea stipulation, Agents had placed a GPS tracking device

on Myer's vehicle while it was parked on a public street. A combination of electronic and

traditional visual surveillance was used by the officers to follow Myers' vehicle on the night in

question.

Officers followed the vehicle to a parking lot at Route K and County Road 317 where Myers stopped for a couple of minutes, apparently to pick up James Hendrix, as officers later located Hendrix's vehicle at that parking lot. *Id*. The pair was then followed to a self storage facility near Glen Allen, Missouri. *Id*. There, officers observed Myers' vehicle turn off and travel up a logging road behind the facility. *Id*.

Approximately one hour and fifteen minutes later, the vehicle left the area and was subsequently stopped by a MSHP Trooper for a traffic violation. *Id*.  Occupying the vehicle was the owner and driver Myers, and Hendrix, who was the sole passenger. *Id*.  Myers and Hendrix gave conflicting accounts of where they had been earlier that evening. *Id*.  Both men consented to a search, but no drugs or other illegal items were recovered. *Id*.

Officers then went to the wooded area near the storage sheds where they located a dumped methamphetamine lab where Myers vehicle had been parked[1].  *Id*.  Officers retrieved a blue plastic tote that contained two empty 120 Milligram dose Equate (Walmart) brand pseudoephedrine boxes (total of 4.8 grams of pseudoephedrine) and an empty Power-Aid bottle. (Plea Stip, p. 11) A sample was taken of the meth lab waste located in another bottle. *Id*.  The Power Aid bottle was swabbed for DNA and submitted to the MSHP Lab. *Id*.

The sample of lab waste came back positive for trace amounts of methamphetamine and pseudoephedrine. *Id*.  The DNA swab from the Power-Aid bottle was consistent with the DNA profile of James Hendrix, who could not be excluded as the source with an approximate

---

[1]Although officers had seen the car pull off the road at that location, they did not physically follow it up the logging road. Officers were able to locate the methamphetamine lab dump site due to the use of the GPS tracking device. While it is possible that they may have found the dump site independently through tire tracks, it is highly unlikely to have been the case.

frequency of 1 in 1.328 quintillion. (Id) Walmart records indicate that Hendrix purchased a box of 120 milligram Equate brand pseudoephedrine pills at the Jackson Walmart store the day before. *Id.* Records also indicated that a relative of Myers had purchased a box of 120 milligram Equate brand pseudoephedrine pills at the Cape Girardeau Walmart store at approximately 1:00 p.m. on September 19, 2009. *Id.* When the relative was interviewed by officers, they related that they had purchased pseudoephedrine pills on several occasions and passed them on to Myers. *Id.*

Investigation revealed that between January 2, 2009 and September 18, 2009, that Hendrix and his associates purchased a total of 66.24 grams of pseudoephedrine which should be attributable to him as relevant conduct. *Id.*

Hendrix and Myer were both indicted by the Federal Grand Jury Sitting in Cape Girardeau, Missouri on August 16, 2010 and were charged with Conspiring to Manufacture Methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Hendrix would ultimately waive his right to pursue pretrial motions and plead guilty as charged on November 8, 2010. On February 8, 2011, Hendrix was sentenced to a term of 120 months imprisonment to be followed by three years of mandatory supervised release.

No appeal was filed, however Hendrix filed his Motion to Vacate the Sentence on February 6, 2012, herein.

## II.   NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under § 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. Id. at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## III. DISCUSSION

Hendrix's claim is both succinct and factually accurate.

Federal Agents placed a GPS tracking device on a vehicle without a warrant and the evidence from the tracking device was used in the prosecution of this case. § 2255 Motion, p. 3

Hendrix is also correct that the Supreme Court's decision in *United States v. Jones*, 132 S.Ct. 945 (2012), has changed the legal landscape concerning the use of GPS tracking devices, however it does not necessarily follow that Hendrix is entitled to have his conviction set aside. The Court in *Jones* simply found that "the government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a search." *Id.* at 950.

## A.    HENDRIX HAS WAIVED HIS RIGHT TO CONTEST THE CONVICTION.

As a part of the plea agreement that Hendrix entered into with the Government, Hendrix waived his right to appeal on pretrial issues, which would include search and seizure issues:

> In the event the Court accepts the plea, as part of this agreement, both the defendant and the government hereby waive all rights to appeal all nonjurisdictional issues including, but not limited to, any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea.  Plea Stip.,p. 3.

Hendrix also waived his right to contest the conviction in any post conviction proceedings such as this one.

> The defendant further agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel at the time of sentencing. Plea Stip. pp. 3-4.

Negotiated waivers of appellate rights and rights to pursue post-conviction relief have been routinely upheld by the Eighth Circuit. *See United States v. Rutan,* 956 F.2d 827, 829 (8th Cir. 1992) (waiver of the right to appeal a sentence contained in a plea agreement is enforceable)*; United States v. His Law*, 85 F.3d 379 (8th Cir. 1996). In *DeRoo v. United States*, 223 F.3d 919 (8th Cir. 2000), DeRoo pleaded guilty pursuant to the terms of a plea agreement providing that DeRoo waived any right to appeal the judgment and sentence and a waiver of all

rights to contest his conviction or sentence in any post-conviction proceeding pursuant to 28

U.S.C. § 2255. After being sentenced, however, DeRoo filed a motion under 28 U.S.C. § 2255

to vacate, set aside, or correct his sentence, claiming that he had been denied effective assistance

of counsel on various grounds. In addressing the Government's claim that DeRoo had waived

his right to file a motion for post-conviction relief under §2255, the Eighth Circuit noted that,

"As a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal

rights from a waiver of collateral-attack rights in the plea agreement context." Id. at 923.

The chief virtues of a plea agreement of speed, economy, and finality "are promoted by

waivers of collateral appeal rights as much as by waivers of direct appeal rights. Waivers

preserve the finality of judgments and sentences, and are of value to the accused to gain

concessions from the government." *Id*.  However, "the decision to be bound by the provisions of

the plea agreement, including the waiver provisions, must be knowing and voluntary." Id., citing

*United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999).

Independent of the waivers contained in the written plea stipulation, Hendrix as a matter

of law, has waived his right to contest his conviction based on a violation of his constitutional

rights which is alleged to have occurred prior to the entry of his plea of guilty herein:

> When a criminal defendant has solemnly admitted in open court that he is in fact
> guilty of the offense with which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S.
> 258, 266 (1973), 93 S.Ct. 1602, 1608.

Any right that Hendrix may have had to challenge his conviction on the basis of a change

in the law concerning the use of a GPS tracker without a warrant, has been waived.

**B.    APPLICATION OF *UNITED STATES v. JONES* IS NOT RETROACTIVE.**

Generally speaking, when a Supreme Court decision results in a new rule of criminal

procedure, that rule applies to all criminal cases still pending on appeal, but as to convictions that are final the new rule only applies in very limited circumstances. *Never Misses a Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005). New procedural rules generally do not apply retroactively unless the rule is of a "watershed" magnitude implicating the fundamental fairness and accuracy of the criminal proceedings. *Id.*

This rule has been consistently applied in the Eighth Circuit, with the Court refusing to apply changes in the law retroactively for cases where the judgement of conviction was final and the matter was not on direct appeal. (See: *Never Misses a Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005) (Refusing to apply *Booker* retroactively), *United States v. Moss*, 252 F.3d 993, 1000 (8th Cir. 2001) (Refusing to apply *Apprendi* retroactively), *Hodge v. United States*, 602 F.3d 935, 938 (8th Cir. 2010) (refusing to apply *Gall* retroactively).

Nothing in *Jones* would seem to indicate that the Court intended to apply the rule retroactively, and certainly not in cases like Hendrix's, where his conviction was already final long before the change in the law.

**C.     HENDRIX LACKS STANDING TO CHALLENGE THE SEARCH.**

The record in this case clearly indicates that Meyer and not Hendrix was the owner and driver of the vehicle upon which the officers had placed the GPS tracking device. Plea stip pp. 9-10.  Hendrix was only a passenger in the vehicle. *Id.* As such, Hendrix does not have standing to challenge the attachment of the GPS device in the first place. Hendrix had neither a reasonable expectation of privacy, nor a property interest in the vehicle.

In *United States v. Barragan*, 379 F.3d 524, 530 (8th Cir. 2004), the Court of Appeals found that a "mere passenger" who was asleep in the back seat of the vehicle lacked standing to challenge the search of the vehicle. In *United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010),

DEA Agents had placed a GPS tracker on a vehicle used by members of a drug conspiracy, and used the data obtained to connect a defendant with the conspiracy. In rejecting the defendant's contention that the placement of the GPS device was an unlawful search the Court said:

> A defendant lacks standing to contest the search of a place to which he has an insufficiently close connection. Acosta neither owned nor drove the Ford and was only an occasional passenger therein. He therefore lacked standing to contest the installation and use of the GPS device.  *Id*. at 609.

While the state of the law concerning the use of GPS devices has changed with the decision in *Jones*, the requirement for standing to challenge that use has not.  Here, Hendrix neither owned, nor was driving the vehicle which was owned by Myers. As such, Hendrix simply does not have standing to challenge the search of the vehicle, even if it could be retroactively applied to him.

**D.   BECAUSE THE USE OF THE GPS DEVICE WAS NOT IMPROPER AT THE TIME OF THE INVESTIGATION, SUPPRESSION IS NOT MERITED.**

In the event that *Jones* were to be applied retroactively to Hendrix's case, and he had the standing to challenge the search, it does not necessarily follow that suppression would be the appropriate remedy. In *Davis v. United States*, 131 S.Ct. 2419 (2011), the defendant had been prosecuted as a result of evidence discovered during the search of a vehicle in which he was riding at the time of his arrest. *Id.* at 2427.  Subsequent to being arrested Davis was handcuffed and placed in the back of a police car. *Id.*  Officers then returned to the car and conducted a search of the vehicle incident to that arrest. *Id*.

While Davis' case was still pending on direct appeal the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009), which severely restricted the permissible scope of vehicle searches incident to arrest. The Eleventh Circuit applied *Gant* and determined that Davis' Fourth Amendment rights had in fact been violated, but did not suppress the evidence, concluding that

penalizing the arresting officer for following binding appellate precedent would do nothing to deter Fourth Amendment violations. *Davis* at 2427.  The United States Supreme Court held that evidence recovered in a search conducted in objectively reasonable reliance on binding appellate precedent is not subject to the exclusionary rule. *Id.* at 2435.

In Hendrix's case, similar circumstances existed at the time of the use of the GPS device. In the Eight Circuit, prior to *Jones*, the rational behind the case law concerning GPS use was based upon the premise that a person traveling in an automobile on public streets has no reasonable expectation of privacy in his movements from one place to another. *United States v. Knotts*, 460 U.S. 276, 281 (1983). *Knotts* also stood for the proposition that where electronic monitoring does not invade upon a legitimate expectation of privacy, no search has occurred. *Id.* at 285.  Contrast this to warrantless electronic monitoring in a private residence, which is considered to be an unreasonable violation of the resident's reasonable expectation of privacy. *United States v. Karo*, 468 U.S. 705, 714-716 (1984).

This was the state of the law which lead the Eighth Circuit to conclude concerning the use of GPS devices that:

> ...when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time. *United States v. Marquez*, 605 F.3d 604, 610 (8th Cir. 2010)

Simply put, that was the law in effect at the time the agents placed a GPS device on Myers' car, in which Hendrix was a passenger. The agents were simply not required to obtain a search warrant prior to placing a GPS tracker on Myer's vehicle. Under the Supreme Court's holding in *Davis*, none of the evidence which was discovered as a result of that action should be subject to the exclusionary rule.

**IV**.     **CONCLUSION**

Hendrix has not established that he is entitled to relief in this matter. There is no dispute as to the facts. The issue is one of whether or not this Court should apply *Jones* retroactively to vacate Hendrix' conviction which was final long before the new rule was announced. Nothing indicates that *Jones* was ever intended to be applied retroactively, and the holding in the case is not of a nature that would normally be subject to retroactive application anyway.

Even if *Jones* was to be applied retroactively, it would not help Hendrix out, as he has waived his right to contest that issue as a result of his plea of guilty.  Even had he chosen to litigate that issue as opposed to waiving it, he could not have prevailed even under the new *Jones* standard, as he was merely a passenger in someone else's vehicle and did not have standing to challenge the placement of the tracker on the vehicle.

Finally, because the officers were acting in accordance with established Eighth Circuit precedence at the time they placed the device, no legitimate purpose is served by the exclusionary rule and the evidence should not have been suppressed after the fact.

For the foregoing reasons, Hendrix's § 2255 motion is **DENIED**.

**SO ORDERED** this 5th day of June, 2013.


_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE